## BUNKER HILL & SULLIVAN MINING & CONCENTRATING CO. v. SAFFORD.

(Circuit Court of Appeals, Ninth Circuit. October 14, 1907.)

### No. 1,307.

MINES AND MINERALS—LEASES—ACTION FOR BREACH—SUFFICIENCY OF EVIDENCE.

A judgment in favor of the lessees of certain mine dumps, which they were to work over for mineral on a royalty basis, against the lessor, for an alleged violation of the lease in excluding plaintiffs from the property, *held* not supported by the evidence, a preponderance of which showed that the work had been abandoned by the lessees because they found it unprofitable.

In Error to the Circuit Court of the United States for the Northern Division of the District of Idaho.

Miron A. Folsom, for plaintiff in error.

John P. Gray, Albert Allen, and J. H. Forney, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The defendant in error was plaintiff in the court below. The complaint upon which the action was there tried, after setting out the ownership and operation by the defendant company of certain described mining claims near the town of Wardner, in the county of Shoshone, Idaho, together with large banks or dumps of mine waste rock from its said mines, that had accumulated at and near the mouths of the various tunnels entering the mines, and near its works and mills, alleged that in the year 1903 the defendant entered into an agreement by which it leased to the plaintiff and one J. B. Mackenzie all of its dumps of mine waste rock situated near its said mines in Shoshone county by an instrument in writing which is set out at large in the complaint, from which instrument it appears that the lessor company, for and in consideration of the royalties, covenants, and agreements in the lease reserved, and to be kept and performed by the lessees, leased the dumps to them for a term expiring at noon on the 1st day of October, 1907, unless sooner forfeited through the violation of any of the covenants of the lease. In consideration of the demise, the lessees covenanted and agreed with the lessor as follows:

"(1) To enter upon said dumps or banks to work the same so as to take out the greatest possible amount of lead and silver. (2) To work said dumps steadily and continuously as the weather and supply of water for washing will permit, from the date of this lease, with at least five men and with as much of said water as can be obtained and used. Cessation to work for the total number of twenty days of any calendar month shall be considered a violation of these covenants, but no work shall be required while the dumps are frozen. (3) To take care of the dumps after they have been worked, so as to

prevent their accumulating upon any ground of the lessor not intended for such waste, and to prevent the same from accumulating in such a way that they will be washed into Mile (Milo) creek, or the South Fork of the Couer d' Alene river, or upon the property of any person or corporation whatever. (4) To allow said lessor and its officers and agents from time to time to enter upon and into all parts of said banks or dumps for the purpose of inspection. (5) To not assign this lease, or any interest thereunder, and to not sublet the said premises or any part thereof, without the written assent of said lessor, and to not allow any person not in privity with the parties hereto to take or hold possession of said premises, or any part thereof, under any pretense whatever. (6) To pay as royalty to the lessor 10 per cent. of the gross value of the product, less freight and treatment and other smelting charges; the lessor to ship and sell all of the product and pay the lessees the return from the same, less the royalty due lessor, and any other charges there may be against the lessees growing out of the lease. (7) To put up a bond signed by bondsmen satisfactory to the lessor (or in lieu thereof a cash bond), in the sum of five thousand dollars ($5,000.00), within ten days from date, sufficient in form to protect the lessor from any damage which the lessees may do to the property of the lessor, or to the property of any other person, and to protect the lessor against any loss or damage whatever by reason of any act of the lessees, and to protect the lessor against liens for labor or supplies. (8) To conduct the workings of all the said dumps as desired by the lessor, in so far as the said work or operations may interfere with the operations of the lessor of its property, such interference to be decided by the manager only. (9) To deliver to said lessor the said premises, with the appurtenances, in good order and condition, without demand or notice on said 1st day of October, or at any time previous upon demand for forfeiture, or upon demand if the continuance of operations by the lessees would interfere with the work of the lessor, or would require the use of water needed by the lessor, or where the continued working by the lessees would require the territory needed by the lessor."

The complaint further alleged that within 10 days after entering into the agreement the plaintiff and Mackenzie executed to the mining company the bond mentioned, and entered upon the performance of their part of the contract, and selected, with the consent and approval of the defendant company, the place where the working of the dumps should begin, and, in order that such working should not in any manner interfere with the work of the defendant company, constructed, at considerable expense, a tramway, the defendant company furnishing the material therefor, such tramway being constructed for the purpose and use of the defendant company, so that it could deposit the ores being mined by the defendant in such a place that the working by the plaintiff and Mackenzie would not interfere with the defendant's work, after which the plaintiff and Mackenzie forthwith constructed at one of the dumps a plant, consisting of flumes, jigs, and other appliances for the concentration and separation of the ores contained therein from the waste rock, and also constructed a platform across Milo Gulch, to prevent the waste from their works from filling up or interfering with that stream, and thereupon commenced the contemplated operations, carrying the work on with more than five men, and continued in such work, in accordance with the terms and conditions of the lease, until on or about June 8, 1903, at which time the lessees were compelled to suspend their work on account of a temporary lack of water in Milo Gulch; that, during the time the lessees so operated, they extracted and delivered to the defendant company, to be shipped and smelted, and in accordance with the terms of the contract, 50,660 pounds of concen-

trates containing silver and lead, of the value, less freight and treatment and other charges, of $642.44, which sum of money was received therefor by the defendant, and was divided between the respective parties in accordance with the terms of the contract; that on or about July 25, 1903, and while the plant of the lessees was shut down by reason of the temporary lack of water to operate it, and during the absence of the lessees, the defendant company, contriving to injure the lessees, and without their knowledge or consent, and in violation of the provisions of the lease, wrongfully deposited large quantities of rock in such position that it would roll down and destroy the works of the lessees, and that they were so destroyed, and at the same time, without notice or demand, wrongfully took possession of the dumps, and has ever since excluded the lessees therefrom, resulting in damage to the lessees in the sum of $100,000; that subsequently, and prior to the commencement of the action, Mackenzie, for a valuable consideration, sold and assigned to plaintiff all of his right, title, interest, and claim under the lease, together with all of his interest in and to said dumps, jigs, flumes, tools, and other property belonging to the plaintiff and the said Mackenzie.

The defendant in its answer admitted the making of the lease, but put in issue the other material allegations of the complaint, and further answered, and alleged, among other things, that the plaintiff and Mackenzie took possession under the terms of the contract of all the dumps described in the complaint, and constructed certain flumes, jigs, etc., for the purpose of working the dumps; that among others was a dump known as the "Stemwinder dump," the works erected on which did not cost more than $100; that about June 8, 1903, and after working the dump, the plaintiff and Mackenzie found that they contained such a small amount of lead and silver that they could not be worked with a profit, and because they were unable to pay the laborers employed in the work the said lessees on or about the date mentioned abandoned the work; that such abandonment was not caused by any lack of water, or because the dump was frozen, or from any inclemency of the weather; that the plaintiff and Mackenzie ceased work continuously for a total number of more than 20 days in the month of June, 1903, by reason of which cessation of work they abandoned and forfeited all rights under the lease, and that neither of them ever afterwards attempted to resume work thereunder; that the lessees did not conduct their work as desired by the lessor, but, on the contrary, so as to interfere with the operation by the lessor of its property, and that the manager of the defendant company on or about July 1, 1903, decided that the method of working which had been adopted by the plaintiff and Mackenzie interfered with the operation by the lessor of its said property, and caused the plaintiff and Mackenzie to be notified of such decision; that on or about July 1, 1903, the defendant needed for dumping purposes the use of a certain portion of the Stemwinder dump which had been occupied by the plaintiff and Mackenzie, and that on or about that date, and after the plaintiff and Mackenzie had closed down their said work and abandoned or forfeited the same, the defendant notified them of that fact, and to remove a certain flume and other works from a portion of that dump if they considered the same

of any value, but that, notwithstanding that there was such notice, the plaintiff and Mackenzie failed to remove such property, and that there-after, and on or about July 25, 1903, the defendant in the course of its mining operations resumed the use of a portion of the Stemwinder dump, as a result of which a portion of one of the flumes was injured to an extent not exceeding $40, but that such injury was, without the fault of the defendant, and after the plaintiff and Mackenzie had been given reasonable opportunity to remove the same; that the said acts of the defendant did not interfere with the working by the plaintiff and Mackenzie of any other of the dumps mentioned in the lease, or any portion of the Stemwinder dump, except such as was needed by the defendant company; "that, notwithstanding the acts of abandonment or forfeiture on the part of said Mackenzie and said plaintiff of said contract, defendant has not at any time excluded, and does not now exclude, the said plaintiff or the said Mackenzie, or either of them, from any portion of any of said dumps except the portion required for dumping purposes as hereinabove specified; but defendant alleges that neither plaintiff nor Mackenzie has ever attempted to re-sume work thereon. And defendant alleges that it has not removed any portion of said dumps mentioned or described in said contract, but defendant has added to said dumps in the course of its operations."

At the trial the plaintiff waived any and all damages growing out of injury to its flumes and other apparatus, claiming only damages for loss of prospective profits, and at the conclusion of the plaintiff's case the defendant moved the court for a direction to the jury to return a verdict in its favor on the grounds that the evidence was too uncertain and speculative for a basis for any verdict, that the lease was terminated by notice given by the manager of the defendant company of the interference by the work of the lessees with the mining operations of the lessor, and that the undisputed evidence showed breaches of the covenants of the lease, in that the lessees abandoned the said work and also violated those clauses of the lease prohibiting the assignment thereof, or any interest therein, and against the subletting of any part thereof.

In denying the motion so made by the defendant, as well as in its instructions to the jury, and in its subsequent order overruling the defendant's motion for a new trial, the court below expressed grave doubts as to the sufficiency of the evidence upon which to rest a verdict for damages for loss of anticipated profits, and in respect to the alleged assignment by one of the lessees to the other of his interest in the lease, and in respect to the alleged subletting, and also in respect to the alleged termination of the lease on the ground of the interference by the lessees' works with the operations of the defendant company. We do not deem it necessary to decide either of those questions, for the reason that a careful consideration of the record satisfies us that the lease and all work thereunder was abandoned by the lessees shortly after the commencement of the work, not because of any lack of water, or because any of the dumps were frozen, or because of any state of the weather, but because of their financial difficulties, and because they found the work unprofitable. We think this plainly appears from the plaintiff's own testimony, taken as a whole, and in connection with

the undisputed fact, shown by the record, that after the lessees suspended all of their work they left that section of the country and leased the dumps to Relling & Williams, who, after working there awhile, also "got tired and quit."

The judgment is reversed, and the case remanded.